UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAKIA ROSE,

                              Plaintiff,

        v.

O. GARRITT, CORRECTION SERGEANT;
JOHN DOLE, CORRECTION SERGEANT;
PAUL D. MILLER, CORRECTION
OFFICER; WARREN FREEMAN,
CORRECTION OFFICER; ROBERT J.
COCUZZA, CORRECTION OFFICER;
DANIEL J. LAVELLE, CORRECTION
OFFICER; ZA'QUAWN GRISET,
CORRECTION OFFICER; NURSE
MILLER, REGISTERED NURSE;
WILLIAM A. LEE, SUPERINTENDENT;
EDWARD R. BURNETT, DEPUTY
SUPERINTENDENT OF SECURITY, all
being sued in their official and individual
capacities,[1]

                              Defendants.

No. 16-CV-3624 (KMK)

OPINION AND ORDER

Appearances:

Michael H. Sussman, Esq.
Valeria A. Gheorghiu, Esq.
Sussman & Associates
Goshen, NY
*Counsel for Plaintiff*

---

[1] The Complaint sues all Defendants in their official and individual capacities. However, Plaintiff now concedes that he seeks damages against Defendants only "in their individual capacities." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Partial Dismissal 15 n.2 ("Pl.'s Mem.") (Dkt. No. 48)). *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985) (explaining that the Eleventh Amendment bars a damages action against State officials sued in their official capacity). The Clerk of Court is hereby directed to amend the caption accordingly.

Paulina Stamatelos, Esq.
Kara F. Sweet, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Nakia Rose ("Plaintiff"), currently incarcerated at Green Haven Correctional

Facility, filed the instant Complaint, pursuant to 42 U.S.C. § 1983, against Superintendent

William A. Lee ("Lee"), Deputy Superintendent of Security Edward R. Burnett ("Burnett"),

Correction Officer Paul D. Miller ("C.O. Miller"), and Registered Nurse Warren Miller ("Nurse

Miller") (collectively, "Defendants"), and several other Correction Officers and Sergeants at

Green Haven. (Compl. (Dkt. No. 2).) Plaintiff alleges that Defendants violated Plaintiff's rights

under the Eighth and Fourteenth Amendments of the U.S. Constitution because Lee and Burnett

failed to protect him from an assault by correction officers, C.O. Miller wrote a false disciplinary

report after the assault causing Plaintiff to be placed in solitary confinement, and Nurse Miller

falsified his medical records to cover up the assault. (*See generally* Compl.)

Before the Court is Defendants' partial Motion To Dismiss the Complaint Pursuant to

Federal Rule of Civil Procedure 12(b)(6). (*See* Notice of Mot. To Dismiss (Dkt. No. 36); Mem.

of Law in Support of Defs.' Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 37).)[2] Defendants claim

that Plaintiff fails to state an Eighth Amendment or a Due Process claim, and, in the alternative,

they are entitled to qualified immunity. (Defs.' Mem.)[3] For the following reasons, Defendants'

Motion is granted.

_____

[2] Defendants purport to move to dismiss under Federal Rule of Civil Procedure 12(b)(1) as well, but they raise no arguments relating to the Court's subject matter jurisdiction.

[3] The Motion is only made on behalf of Defendants C.O. Miller, Nurse Miller, Lee, and Burnett, and not the other Defendants named in the Complaint. (*See* Defs.' Mem.)

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, (Dkt. No. 2), and are taken as true for the purpose of resolving the instant Motion.[4]  Plaintiff was a prisoner incarcerated at Green Haven Correctional Facility during the time of the alleged events.  (Compl. II(A), (D).)

On September 14, 2014 at approximately 6:20 pm, Plaintiff was locked in cell number 147, "the fifth cell from the front door," in the H-Block Housing Unit at Green Haven Correctional Facility.  (*Id.* at II(C), (D) ¶ 1.)  "[P]laintiff's cell opened, [and] he and 3 prisoners exited H-Block to proceed to the exercise yard."  (*Id.* at II(D) ¶ 2.)  "Plaintiff was [t]hen immediately surrounded by several security staff," and C.O. Miller gave him "loud boisterous orders to place his hands high on the wall."  (*Id.*)  "[P]laintiff immediately complied."  (*Id.*) "The other prisoners were ordered to return back into the Housing Unit," and "the . . . door was slammed shut."  (*Id.*)

"Plaintiff was th[e]n surrounded by" C.O. Miller, additional Correction Officers Warren Freeman ("Freeman") and Robert J. Cocuzza ("Cocuzza"), and Correctional Sergeants O. Garritt ("Garritt") and John Dole.  (*Id.* ¶ 3.)  C.O. Miller was on Plaintiff's right side, Freeman on his left side, and Cocuzza was behind him.  (*Id.*)  Correction Officers Daniel J. Lavelle and Za'Quawn Griset were "also in the immediate area."  (*Id.*)  "While [P]lainitff's hands remained high and flat on the wall, [C.O. Miller] punched [P]laintiff in the face" on his "right side," and Plaintiff was "told 'You better not take your hands off that fucking wall.'"  (*Id.* ¶ 4.)  Freeman

---

[4] The Complaint is divided into six sections, some of which do not contain numbered paragraphs.  (*See* Compl.)  The Court will number those unnumbered paragraphs and cite to them with their section and sub-section number.  For example, the first paragraph under "Factual Allegations" would be cited as "Compl. II(D) ¶ 1."

then "punched [P]laintiff in the face" on the "left side." (*Id.* ¶ 5.) Garritt gave an "order to take [P]laintiff to [the] floor," and C.O. Miller "then placed his arm around [P]laintiff's neck" in a "[h]eadlock" and "slammed [P]laintiff down to the floor," where he "was immediately handcuffed." (*Id.*) "Plaintiff was th[e]n beaten by several of [D]efendants." (*Id.* ¶ 6.) He "was kicked, knelt upon and punched several times all over his body." (*Id.*) "Freeman grabbed [P]laintiff's right ankle and began twisting it." (*Id.*)

Superintendent Lee, who worked in his position from 2009 through 2014, and Deputy Superintendent of Security Burnett, who worked at Green Haven "for at least 15 years," were "well aware of . . . various inmates['] complaints filed against [Freeman] (whom has [been] employed in [Green Haven] for over 10 years)." (*Id.* ¶ 13.) However, Lee and Burnett "failed to take appropriate measures to deal with this problematic employee." (*Id.*) Similarly, C.O. Miller had been "named in various complaints involving use of force, etc.," which "the [Green Haven] Administration [was] familiar with," but the complaints "fell on dead ears." (*Id.* ¶ 14.) "As a direct result of [Lee and Burnett's] inaction . . . [C.O. Miller's and Freeman's] actions [were] in essence condoned at the highest level inside [Green Haven] whereas [C.O. Miller and Freeman] feel[] comfortable in continuing to break the law because [Green Haven's] Chief Executive Officer and Executive Staff are going to protect [them]." (*Id.* ¶¶ 13–14.)

After the incident, "Plaintiff was taken and admitted into the Special Housing Unit (['] SHU[']) and was medically examined by . . . Nurse Miller, RN." (*Id.* ¶ 7.) "During the medical examination, [P]laintiff gave a detailed description of what happened to him" and his "pains" and "injuries." (*Id.*) His "detailed description included telling [Nurse Miller] that he [wa]s having excruciating pain in his jaw, severe pain in [his] right shoulder, lower back[,] and his right ankle[,] and how these injuries came about ([p]rison guard abuse)." (*Id.* ¶ 8.) During

the medical examination, "plaintiff's face was visibly bruised and swollen," and his body was "visibly bruised." (*Id.* ¶ 8.)

"On September 22, 2014, [P]laintiff was issued a Tier III Misbehavior Report, reported by [C.O. Miller] on September 14, 2014." (*Id.* ¶ 9.) The Report, which was "falsified," (*Id.* ¶ 16), charged Plaintiff with violating several Department of Corrections and Community Services ("DOCCS") rules, including violent conduct, creating a disturbance, refusing a direct order, and refusing a search or frisk, (*id.* ¶ 9). Plaintiff had a Tier III Hearing which lasted from September 26 through October 2, 2014. (*Id.* ¶ 10.) Captain R. Harris, who conducted the hearing, found Plaintiff "Not Guilty" of all the charges except refusing a direct order, "and imposed a disposition of 9 [d]ays of SHU confinement; 9 [d]ays of [l]oss of [p]ackages; 9 [d]ays [l]oss of [c]ommissary and 9 [d]ays [l]oss of [p]hones," to run from September 26 through October 5, 2014. (*Id.*) On December 18, 2014, this "Guilty Disposition" was reversed, and all references to the incident were ordered "expunged from [P]laintiff's records." (*Id.* ¶ 11.)

However, Plaintiff had already spent 21 days in SHU, from which he was released on October 3, 2014. (*Id.* ¶ 12.) Upon his release, Plaintiff was "returned back to the general population" in the J-Block. (*Id.*) On October 6, 2014, he "went to Sick-Call," and two days later, "was seen by a Medical Provider (Ms. Welsh)." (*Id.*) Plaintiff then "became aware that his [m]edical files did not accurately reflect what [he] had told to the nurse ([Nurse Miller]) on September 14, 2014." (*Id.*) Nurse Miller "purposely omitted his detailed description and by doing so . . . failed in his medical professional responsibilities to accurately record [P]laintiff['s] account o[f] how he suffered these injuries." (*Id.*)

B. Procedural Background

Plaintiff filed the Complaint on May 13, 2016. (Compl. (Dkt. No. 2).) The Court initially granted Plaintiff's pro se request to proceed in forma pauperis on June 7, 2016, (Dkt. No. 5), and issued two Orders of Service directing service on Defendants, (*see* Dkt. Nos. 7, 24). After all Defendants were served, (*see* Dkt. Nos. 10–13, 18–19, 25–26), Defendants requested an extension of time to answer or move against the Complaint, (Letter from Paulina A. Stamatelos, Esq. to the Court (May 3, 2017) (Dkt. No. 28)), which the Court granted, (Dkt. No. 29). On June 19, 2017, Valeria A. Gheorghiu, Esq. filed a notice of appearance on behalf of Plaintiff. (Dkt. No. 30.) On June 22, 2017, the Court denied Defendants' request for another extension and ordered them to respond to a purported amended complaint within 20 days. (Dkt. No. 32.) However, on July 25, 2017, Defendants informed the Court that Plaintiff's counsel "would not be filing an amended complaint and will treat Plaintiff's pro se complaint as the operative complaint." (Letter from Paulina A. Stamatelos, Esq. to the Court (July 25, 2017) (Dkt. No. 33).) The Court approved the Parties' proposed briefing schedule in a memo endorsement. (Dkt. No. 34.)

On August 2, 2017, certain Defendants, including C.O. Miller, filed an Answer. (Answer (Dkt. No. 35.) The same day, Defendants filed a partial Motion To Dismiss and an accompanying memorandum. (Notice of Mot. To Dismiss; Defs.' Mem.) On October 4, 2017, Plaintiff filed a motion for an extension of time to file opposition papers, which the Court granted. (*See* Letter from Michael H. Sussman, Esq. to Court (Oct. 4, 2017) (Dkt. No. 45)); Dkt. No. 47.) Plaintiff subsequently filed a memorandum of law in opposition to the Motion To Dismiss, (Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Partial Dismissal ("Pl.'s Mem.") (Dkt.

No. 48)), and Defendants filed a reply memorandum in support of their Motion, (Reply Mem. of Law in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 49)).[5]

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff

---

[5] On August 28, 2017, Plaintiff wrote a letter to the Court regarding a potential "conflict of interest" with one of the Defendants, who was now working in Plaintiff's new housing unit. (Letter from Plaintiff to Court (Aug. 28, 2017) (Dkt. No. 40).) After the Court ordered a response, (Dkt. Nos. 41–42), Defendants' counsel filed a letter explaining that the identified defendant is Miller, who recently began working "as the Relief Day Officer" for Plaintiff's housing unit, but who "has not spoken with . . . Plaintiff regarding the Lawsuit," "has not discussed the Lawsuit with his colleagues, nor shown copies of the complaint to staff at Green Haven," and who has been advised "to refrain from discussing the Lawsuit with anyone outside [the New York Attorney General's] Office." (Letter from Paulina A. Stamatelos, Esq. to Court (Sept. 21, 2017) (Dkt. No. 43)). Further, the letter noted Plaintiff's ability to file a grievance related to his conditions of confinement. (*Id.*)

has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendants' Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).[6] "In adjudicating a Rule 12(b)(6) motion, a district court

---

[6] The Court acknowledges that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted). However, while Plaintiff filed the Complaint pro se, he later obtained counsel, (*see* Notice of Appearance (Dkt. No. 30)), who had an opportunity to file an amended complaint, (Dkt. No. 32), but ultimately adopted Plaintiff's pro se complaint as "the operative complaint," (Dkt. No. 33). Because Plaintiff was not pro se at the time the Motion To Dismiss was filed, the Court need not construe his Complaint or his opposition papers liberally in deciding the Motion. *See McConnell v. United States*, No. 14-CV-5355, 2017 WL 167917, at *2 (S.D.N.Y. Jan. 17, 2017) ("Because [the plaintiff] was not pro se at the time the summary judgment briefs were filed, [his] briefs are not pro se submissions that must be construed liberally in deciding the motions for summary judgment." (italics omitted)); *see also Triestman*, 470 F.3d at 475 (explaining that the "policy of liberally construing pro se submissions is driven by" the court's

must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

### B. Analysis

#### 1. Personal Involvement of Defendants Lee and Burnett

Defendants Lee and Burnett argue that the Complaint should be dismissed against them because they were not personally involved in the alleged violation of Plaintiff's Eighth Amendment rights. (Defs.' Mem. 6–10.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show. . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*,

---

obligation "to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training" (italics and internal quotation marks omitted)).

556 U.S. at 676.  Therefore, Plaintiff must plausibly allege that each of the Defendants' actions fall into one of the five categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to satisfy this standard as to Lee and Burnett.  The Complaint does not allege their direct participation in the alleged use of excessive force.  *See Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (explaining that direct participation involves "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal").  Instead, the Complaint alleges that Lee and Burnett were "well aware of the various inmate[] complaints filed against" Freeman, who had worked at Green Haven for over 10 years, but "failed to take appropriate measures to deal with this problematic employee."  (Compl. II(D) ¶ 13.)  However, Plaintiff does not allege how many complaints there were, what conduct was described in the complaints, when the complaints were filed, and if any of them were filed by Plaintiff.  Similarly, while the Complaint also alleges that Lee and Burnett were "familiar" with "various complaints involving use of force, etc." filed against C.O. Miller, it provides no additional details about these complaints.  (*Id.* ¶ 14.)  For example, Plaintiff says nothing about whether these complaints were ever substantiated.  Nor does the Complaint allege how Lee and Burnett were made aware of these complaints, aside from listing their positions and how long they have worked at Green Haven.  (*Id.* ¶ 13.)  And, the Complaint does not allege *when* they became aware of these complaints—before, or after, the alleged assault on Plaintiff.[7]  Therefore, the Complaint does not plausibly allege what Lee and

---

[7] To the extent that Plaintiff is attempting to allege that Lee and Burnett were informed of the use of excessive force and "failed to remedy" it afterward by disciplining Freeman and C.O. Miller, the Complaint does not plausibly allege such a claim.  *Grullon*, 720 F.3d at 139; *see also*

Burnett were aware of about Freeman and C.O. Miller, how they were aware of it, and when they were aware of it.[8]

However, to the extent Plaintiff alleges that Lee and Burnett were aware of the violent proclivities of Freeman and C.O. Miller *before* the excessive force incident, the Complaint does not plausibly allege that Lee and Burnett were personally on notice of the likelihood that they would assault Plaintiff. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (concluding that the defendant's receipt of a letter from plaintiff generally complaining about the conditions of confinement was insufficient to put defendant "on actual or constructive notice of the violation"); *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 364 (S.D.N.Y. 2013) ("Allegations as to [the] defendants' knowledge of alleged constitutional violations are insufficient to impose supervisory liability under § 1983 unless accompanied by allegations that the defendants had direct responsibility for monitoring the alleged violation or that there had been a history of previous episodes putting the defendants on notice of the problem." (internal quotation marks omitted)); *Rahman v. Fischer*, No. 08-CV-4368, 2010 WL 1063835, at *5 (S.D.N.Y. Mar. 22, 2010) (finding allegation that defendant "received 'several' complaints of staff assaulting prisoners" as "an insufficient allegation of notice of any policy or custom of assaults by correction officers"); *id.* (explaining that allegation that defendant's "'office' received fifty reports of assaults on staff prior to" the incident was insufficient to allege that the

---

*Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *6 (S.D.N.Y. Sept. 16, 2016) ("While the Complaint alleges knowledge and lack of discipline on the part of [the defendant], Second Circuit law has long taught that . . . merely reciting the legal elements of a successful § 1983 claim for supervisory liability does not meet the plausibility pleading standard" (internal quotation marks omitted)).

[8] Plaintiff's opposition makes additional factual allegations not in the Complaint to attempt to fill some of these gaps, but the Court will not consider them at the Motion To Dismiss stage. (Pl.'s Mem. 2, 6–8.)

defendant "was personally on notice of a condition that could reasonably lead to an assault of an inmate like [the plaintiff]"); *cf. Chamberlain v. City of White Plains*, 986 F. Supp. 2d. 363, 394–95 (S.D.N.Y. 2013) (explaining that the fact that the defendant "foresaw the possibility that lethal force could become necessary, depending how events unfolded, is not enough to make him responsible for [another defendant's] independent decision to" use excessive force). In other words, Plaintiff has not plausibly alleged that Lee and Burnett created or allowed the continuance of a policy or custom under which excessive force was used against inmates, that they were grossly negligent in supervising their subordinates, or that they were deliberately indifferent by failing to act on information indicating that excessive force was being used. *Grullon*, 720 F.3d at 139 (listing personal involvement categories).[9]

Similarly, although the Complaint alleges that Lee and Burnett "failed to take appropriate measures," it does not allege what "measures" they should have undertaken to "deal with" Freeman, and what they were authorized to do "in their "[s]upervisory roles" that would

---

[9] Plaintiff relies exclusively on deliberate indifference cases in the Eighth Amendment context to argue that the Complaint plausibly alleges the personal involvement of Lee and Burnett. (*See* Pl.'s Mem. 2–8.) Even assuming those cases are applicable to the threshold question of personal involvement, Plaintiff has not plausibly pled that Lee and Burnett were "aware of facts from which the inference could be drawn that a substantial risk" existed that Freeman and C.O. Miller would specifically assault Plaintiff and that they actually "dr[ew] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Nor do the Plaintiff's allegations about "various complaints," (Compl. II(D) ¶¶ 13, 14), plausibly demonstrate that Defendants were aware of a general risk of assault faced by all inmates at Green Haven. *Cf. id.* at 843 (permitting a plaintiff to allege a risk of harm faced by "all prisoners in his situation"); *id.* at 842 (explaining that a risk may be so "obvious" that the defendant's actual knowledge may be inferred when the evidence "show[s] that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," and that "the circumstances suggest" that the defendant "had been exposed to information concerning the risk" (internal quotation marks omitted)); *see Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *11 (S.D.N.Y. Mar. 31, 2016) (dismissing complaint because it "contain[ed] no allegations about any pattern of violence" at the prison, including "allegations that *any* inmates had ever been involved in *any* attacks [there], let alone that such attacks were common and thus would provide notice to [the d]efendants that the conditions . . . posed a substantial risk to inmates").

have prevented the assault on Plaintiff. (Compl. II(D) ¶ 13.)  The naked assertion that

Defendants' alleged inaction "condoned" the use of excessive force by C.O. Miller and Freeman

and made them feel "comfortable in continuing to break the law" is insufficient.   (Compl. II(D)

¶¶ 13, 14.)  *Iqbal*, 556 U.S. at 678 (explaining that a complaint does not "suffice if it tenders

naked assertions devoid of further factual enhancement" (alteration and internal quotation marks

omitted)).  And, to the extent Plaintiff is attempting to hold Lee and Burnett liable merely

because of their supervisory positions at Green Haven, (*see, e.g.*, Comp. II(D) ¶ 13 ("Plaintiff is

alleging that these 2 defendants in their [s]upervisory roles failed to take appropriate

measures."); *id.* ("Freeman's actions [were] in essence condoned at the highest level inside

[Green Haven] whereas Freeman feels comfortable in continuing to break the law because

[Green Haven] Chief Executive Officer and Executive Staff are going to protect him."); *id.* ¶ 14

(same as to C.O. Miller)), this is insufficient to establish personal involvement under § 1983.

*See Wright*, 21 F.3d at 501 ("Nor can [the defendant] be held personally responsible simply

because he was in a high position of authority in the prison system."); *Victory v. Pataki*, 814 F.3d

47, 67 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (same).

   The Court therefore grants Lee's and Burnett's Motion to Dismiss for lack of personal

involvement.

### 2.  Eighth Amendment Claim Against Defendant Nurse Miller

   Defendant Nurse Miller argues that the Complaint fails to state an Eighth Amendment

claim against him.  (Defs.' Mem. 10.)[10]   "The Eighth Amendment forbids deliberate indifference

---

[10] Plaintiff's claim falls under the Eighth Amendment, rather than the Fourteenth
Amendment Due Process Clause, because he was an incarcerated prisoner at the time of the
relevant events.  ((*See* Compl. II(A), (D).)   *See McCray v. Lee*, No. 16-CV-1730, 2017 WL
2275024, at *4 n.1 (S.D.N.Y. May 24, 2017) ("The status of a plaintiff as either a convicted

to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks omitted). To establish such a claim, Plaintiff must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation" and (2) that Nurse Miller "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017). The Complaint does not satisfy these requirements. It alleges that, after the assault, Nurse Miller "medically examined" Plaintiff, who was "visibly bruised and swollen," and that during the course of the medical examination, Plaintiff gave Nurse Miller "a detailed description" of his injuries and pain and what caused them—"prison guard abuse." (Compl. II(D) ¶¶ 7–8.) It further alleges that several weeks later, Plaintiff discovered that his "[m]edical files did not accurately reflect what [he] had told to the nurse," and that "Nurse Miller . . . purposely omitted his detailed description," thereby "fail[ing] in his medical professional responsibilities to accurately record [P]laintiff['s] account o[f] how he suffered these injuries." (*Id.* ¶ 12.)

However, even assuming Nurse Miller had such a professional responsibility and violated it, this act alone does not violate the Eighth Amendment. The Complaint does not allege that Plaintiff received inadequate medical care at all, let alone as a result of Nurse Miller's purported omissions, and therefore does not satisfy the objective prong of the Eighth Amendment analysis. *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) ("The first inquiry is whether the prisoner was actually deprived of adequate medical care."). Nor does Plaintiff allege that Nurse Miller's failure to preserve an "accurate[] record" of Plaintiff's account of "how he suffered these . . . injuries" caused him physical harm, or that it is likely to do so. (Compl. II(D) ¶ 12.)

---

prisoner or pretrial detainee dictates whether his conditions of confinement are analyzed under the Eighth or Fourteenth Amendment.")

*See Salahuddin*, 467 F.3d at 280 (asking "what harm, if any, the inadequacy [in treatment] has caused or will likely cause the prisoner"). And, although the Complaint alleges that Nurse Miller "purposely omitted" Plaintiff's description of the assault, it does not allege facts plausibly suggesting that doing so was "deliberatel[ly] indifferent," or, put differently," that he "fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Canady v. Correct Care Sols.*, No. 15-CV-4893, 2017 WL 4280552, at *5 (S.D.N.Y. Sept. 25, 2017) (internal quotation marks omitted). Thus, the Complaint fails to state a claim for deliberate indifference to medical needs.

To the extent that Plaintiff believes the Complaint alleges an independent Eighth Amendment violation for the purposeful omission of information from Plaintiff's medical files without alleging any harm, physical or otherwise, the Court is aware of no caselaw supporting that position.[11] Plaintiff cites three cases, none of which is binding on the Court and in any event are all inapposite. (*See* Pl.'s Mem. 10–12.) The first two cases, both from the Tenth Circuit, involve deliberate indifference claims in which the falsification of documents is used to satisfy the subjective element—deliberate indifference. The first case concludes that "a showing of deliberate refusal to provide medical attention . . . *coupled with* falsification of medical records may give rise to an Eighth Amendment violation." *Green v. Branson*, 108 F.3d 1296, 1304 (10th

---

[11] Plaintiff asserts in his memorandum that Nurse Miller "falsified his medical record and did not record" that the injuries were caused by the beating, and that these entries served to "cover up" the assaulting officer's behavior, "deprive [P]laintiff of a relatively contemporaneous record of his outcry and account," and "disallow[] later medical professionals access to a full and complete record, potentially impairing future treatment." (Pl.'s Mem. 9–10). But the Complaint contains none of these allegations. Rather, the Complaint alleges only that Nurse Miller "purposely omitted [Plaintiff's] detailed description" of how he was injured, and alleges no resulting harm. (Compl. II(D) ¶ 12.) This omission is important, because Plaintiff "may not amend his complaint to add new claims by raising them for the first time in his motion papers." *Ifill v. N.Y. State Court Officers Ass'n*, 655 F. Supp. 2d 382, 393 (S.D.N.Y 2009).

Cir. 1997) (emphasis added). Similarly, the second case holds that a plaintiff did not satisfy the standard set forth in *Green*, because he did not proffer any evidence that the defendants "falsified his medical records." *Lindwurm v. Wexford Health Sources, Inc.*, 84 F. App'x 46, 48 (10th Cir. 2003).[12] The Court reiterates that Plaintiff has not plausibly alleged that Nurse Miller refused to provide him with medical treatment—the Complaint alleges only that Nurse Miller "purposely omitted" Plaintiff's version of events and injuries from the medical records. (Compl. II(D) ¶ 12.) In the third case Plaintiff cites, a court concluded that "willfully shredding records from an inmate's medical file in order to harass and threaten him violates the Eighth Amendment, even in the absence of a worsened condition." *Wesley v. Davis,* 333 F. Supp. 2d 888, 894 (C.D. Cal. 2004). Even assuming that this case correctly states the law, the Complaint does not allege that Nurse Miller shredded or otherwise destroyed or altered Plaintiff's medical records.[13] Nor does

---

[12] The Court also notes that this summary order is not precedential even in the 10th Circuit, s*ee* 10th Cir. R. 32.1(A), (C) (permitting citation to unpublished decisions issued prior to January 1, 2007 but noting they are "not precedential"), and would not be citable at all if it were a summary order of the Second Circuit, *see* 2d Circuit L.R. 32.1.1(b)(2) (noting that "a party may not cite a summary order of [the Second Circuit] issued prior to January 1, 2007" in a document filed with the Second Circuit").

[13] The Court also notes that it is far from settled that falsification of medical records alone violates the Eighth Amendment. *See, e.g.*, *Crisp v. Wasco State Prison*, No. 13-CV-1899, 2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) ("While falsification or alteration of medical records may supply facts relevant to an Eighth Amendment claim of deliberate indifference to serious medical needs, Plaintiff has no independent claim for relief under the Eighth Amendment for denial of accurate medical records." (internal quotation marks omitted)); *Williams v. Bentivegna*, No. 14-CV-6105, 2015 WL 162994, at *7 (W.D.N.Y. Jan. 13, 2015) ("[Plaintiff's] complaints that . . . doctors wrote false information in his medical record[] might amount to malpractice, but not a constitutional violation."); *Arnold v. Westchester Cty. Corr. Facility*, No. 10- CV-1249, 2011 WL 3501897, at *5 (S.D.N.Y. July 18, 2011) (assuming, without deciding, that a claim that a doctor "deliberately falsified" plaintiff's medical records "is cognizable," but dismissing the claim because the plaintiff "failed to allege how he was harmed by [the d]efendant's actions"), *adopted by* 2011 WL 3475407 (S.D.N.Y. Aug. 9, 2011); *cf. Hodge v. Sidorowicz*, No. 10-CV-428, 2011 WL 1226280, at *8 (S.D.N.Y. Mar. 24, 2011) ("The claims against the [prison] nursing staff for their alleged denial of necessary medication and alleged retaliatory falsification of medical records, if properly pleaded, could raise valid deliberate

it allege that Nurse Miller purposely omitted Plaintiff's descriptions in order to "deter . . . or . . . punish Plaintiff for" bringing a grievance or a lawsuit. *Id.*

Plaintiff argues that Nurse Miller "purposely omitted" Plaintiff's descriptions of his injuries and the assault "to limit [Plaintiff]'s capacity to file and win an Eighth Amendment suit." (Pl.'s Mem. 12; *see also id.* at 9 (asserting that Nurse Miller's "[f]alse entries cover up the behavior of those who beat [P]laintiff"). This allegation is, once again, not in the Complaint. If adequately pled, these facts could potentially allege a § 1983 claim against Nurse Miller for conspiracy to violate his Eighth Amendment or First Amendment rights. However, because the Complaint does not allege an agreement between Nurse Miller and the assaulting Defendants— or any other actor, for that matter—to so violate his rights, or that the purposeful omissions caused him damage, it fails to state a § 1983 conspiracy claim. *See Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) ("To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."); *Thomas v. Demeo*, No. 15-CV-9559, 2017 WL 3726759, at *12 (S.D.N.Y. Aug. 28, 2017) (dismissing § 1983 conspiracy claim because the complaint did not "provide even circumstantial allegations that the alleged conspiracy existed, much less any details as to the extent of the alleged agreement or how [the] [d]efendants collectively carried it out"); *Tavares v. New York City Health & Hosps. Corp.*, No. 13-CV-3148, 2015 WL 158863, at *7–8 (S.D.N.Y. Jan. 13, 2015) (explaining that a plaintiff must allege that the defendants' destruction of documents "prevented him from litigating his underlying Eighth Amendment"

---

indifference claims."); *Espinal v. Goord*, No. 00-CV-2242, 2001 WL 476070, at *15 n.51 (S.D.N.Y. May 7, 2001) (collecting cases involving Eighth Amendment claims for improper, or refusal to give, medical treatment combined with falsification of medical records).

claim in order to state a § 1983 claim for "a cover-up" that violated his "First Amendment right of access to courts").

Accordingly, Plaintiff fails to plausibly state an Eighth Amendment claim against Nurse Miller, and the claim dismissed.

### 3. Eighth Amendment and Fourteenth Amendment Claims Against C.O. Miller

C.O. Miller argues that the Complaint fails to state a due process claim against him for filing a false misbehavior report. (Defs.' Mem. 11–12.)[14] The Complaint lists the issuing of "a falsified misbehavior [report] . . . and [being] placed in [SHU]" as independent unconstitutional actions. (Compl. II(D) ¶ 16). However, it does not mention due process or the Fourteenth Amendment; in fact, the only alleged constitutional violation is of the Eighth Amendment. (*Id.* ¶ 15 ("Defendants violated [P]laintiff's United States Constitutional Rights to be free from cruel and unusual punishment (Cruel and U[nusual] Punishment Clause of the Eighth Amendment"); *id.* ¶ 17 ("As a direct result of these [D]efendants' actions, [P]laintiff's United States Constitutional Rights under the 8th Amendment . . . was violated.") Indeed, Plaintiff's opposition memorandum seems to focus only on the Eighth Amendment. (*See* Pl.'s Mem. 12–15.) In any event, regardless of which Amendment was purportedly violated, the Complaint fails to state such a claim.

The Complaint alleges that on September 14, 2014, the day of the alleged assault, C.O. Miller filed "a Tier III Misbehavior Report" charging Plaintiff with violating several DOCCS rules, including violent conduct, creating a disturbance, refusing a direct order, and refusing a search or frisk. (Compl. II(D) ¶ 9.) The Misbehavior Report was issued to Plaintiff on September 22, 2014, and he received a Tier III Hearing four days later, on September 26, that

---

[14] C.O. Miller does not move to dismiss the excessive force claim against him.

lasted until October 2, 2014.  (*Id.* ¶¶ 9–10.)  The Hearing Officer found Plaintiff "Not Guilty" of

all the charges except refusing a direct order, and "imposed a disposition of" 9 days of SHU

confinement and loss of packages, commissary, and phones, to run from September 26 through

October 5.  (*Id.* ¶ 10.)  Plaintiff spent 21 days in SHU and was released on October 3, 2014.  (*Id.*

¶ 12.)  On December 18, 2014, Plaintiff's "Guilty" disposition was reversed and his record

ordered expunged.  (*Id.* ¶ 11.)

As an initial matter, "a prison inmate has no general constitutional right to be free from

being falsely accused in a misbehavior report."  *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.

1997); *see also Bey v. Griffin*, No. 16-CV-3807, 2017 WL 5991791, at *7 (S.D.N.Y. Dec. 1,

2017) ("It is well settled that a prison inmate has no constitutionally guaranteed immunity from

being falsely or wrongly accused of conduct which may result in the deprivation of a protected

liberty interest.") (alteration and internal quotation marks omitted)).[15]  "Rather, the inmate must

show something more, such as that he was deprived of due process during the resulting

disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's

exercise of his constitutional rights."  *Id.* (internal quotation marks omitted); *see also Dukes v.

Schuck*, 637 F. App'x 37, 39 (2d Cir. 2016) (same); *Boddie*, 105 F.3d at 862 ("There must be

more, such as retaliation against the prisoner for exercising a constitutional right.").  The

Complaint does not allege facts plausibly suggesting that either exception is met here.

Plaintiff has "a due process right to a hearing before he may be deprived of a liberty

interest on the basis of a misbehavior report."  *Boddie*, 105 F.3d at 862; *see also Freeman v.*

---

[15] The Court notes that the Complaint asserts that the report was "falsified," but contains
no specific allegations regarding how it was falsified or what it said.  (Compl. II(D) ¶ 16.)  The
mere fact that Miller and other officers assaulted Plaintiff, without more facts, does not mean
that Plaintiff himself did not violate a DOCCS regulation.  However, for purposes of this Motion,
the Court will assume that the report was falsified.

*Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) (same). Although the Complaint alleges that Plaintiff

was placed in SHU, that deprivation occurred only after he received a multi-day disciplinary

hearing, at which he was found not guilty of several charges. (Compl. II(D) ¶ 10.)[16] The

Complaint alleges no facts suggesting that this hearing constituted insufficient process. *Boddie*,

105 F.3d at 862 (dismissing due process claim because the plaintiff "d[id] not allege any facts

suggesting that the hearing . . . following the misbehavior reports was unfair," and "[i]n fact, he

assert[ed] that he was cleared of wrongdoing at the hearing"); *Franco v. Kelly*, 854 F.2d 584, 587

(2d Cir. 1988) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty

of false disciplinary charges is whether or not the prison has provided the inmate with the

minimum procedural due process protections guaranteed by the Fourteenth Amendment.").

Plaintiff's due process claim appears to rest entirely on the allegation that Plaintiff was later

exonerated of the sole guilty charge. (*See* Compl. II(D) ¶ 11.) That fact alone, however, does

not plausibly allege that the initial hearing was constitutionally infirm. Indeed, Plaintiff's guilty

disposition could have been reversed for reasons unrelated to the procedures employed at the

initial hearing, such as a finding of insufficient evidence. The Complaint therefore fails to state a

procedural due process claim against C.O. Miller for filing a false disciplinary report that

resulted in Plaintiff's segregation in SHU.

---

[16] The Complaint does not allege that the loss of packages, commissary, and phones were
independent liberty deprivations that violated due process, but the same due process analysis
would apply. (*See* Compl. II(D) ¶ 10.) In any event, the Complaint is devoid of any allegations
that these deprivations constitute "atypical and significant hardship[s] . . . in relation to the
ordinary incidents of prison life." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 504 (S.D.N.Y.
2012) (internal quotation marks omitted); *see also Smart v. Goord*, 441 F. Supp. 2d 631, 640
(S.D.N.Y. 2006) (holding that "the loss of phone, package, and commissary privileges" as a
result of a disciplinary hearing did not deprive the plaintiff "of a protected liberty interest"), *on
reconsideration in part*, No. 04-CV-8850, 2008 WL 591230 (S.D.N.Y. Mar. 3, 2008).

Plaintiff argues that *Boddie* and its progeny do not apply here, where C.O. Miller's false report was filed to cover up an underlying Eighth Amendment violation. (Pl.'s Mem. 13–15.) However, Plaintiff cites no case for this proposition.[17] But, even assuming the filing of false misbehavior reports to cover up another Eighth Amendment violation independently violates the Eighth Amendment, the Complaint fails to allege such facts here. The Complaint alleges only that C.O. Miller filed "a Tier III Misbehavior Report" charging Plaintiff with violating several DOCCS rules, including violent conduct, creating a disturbance, refusing a direct order, and refusing a search or frisk on the same day that the assault occurred. (Compl. II(D) ¶ 9.) It does *not* allege that C.O. Miller did so to cover up the assault or his involvement in it. And, once again, to the extent that Plaintiff believes C.O. Miller filed the false report as part of a conspiracy to impede his ability to file a grievance or otherwise sue "to vindicate" his Eighth Amendment rights, (Pl.'s Mem. 14), the Complaint is devoid of any allegations that would plausibly state a § 1983 conspiracy claim. *See Pangburn*, 200 F.3d at 72 (requiring the plaintiff to allege "an agreement . . . to act in concert to inflict an unconstitutional injury"); *Boddie*, 105 F.3d at 862 (dismissing claim of conspiracy between the Hearing Officer and "the officers who filed the reports" because the plaintiff "d[id] not state a factual basis for th[e] conspiracy claim"); *Thomas*, 2017 WL 3726759, at *12 ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (internal quotation marks omitted)); *Tavares*, 2015 WL 158863, at *7–8 (explaining that a plaintiff must allege that the defendants' action "prevented him from litigating his

---

[17] Plaintiff quotes the Second Circuit as stating, either in *Boddie* or in *Franco*: "Accordingly, none of the false reports could arguably have been part of the officers' effort to conceal such violations." (Pl.'s Mem. 13.) The Court was unable to find this quote in *Boddie*, *Franco*, or in any other Second Circuit decision. *See* 105 F.3d 857; 854 F.2d 584.

underlying Eighth Amendment" claim in order to state a § 1983 conspiracy to violate his access to the courts).[18]

Therefore, the Court grants C.O. Miller's Motion to Dismiss the claim against him for filing a false misbehavior report, whether it falls under the Fourteenth Amendment Due Process Clause or the Eighth Amendment.[19]

### III. Conclusion

For the foregoing reasons, Defendants' partial Motion To Dismiss is granted. However, because this is the first adjudication of Plaintiff's claims on the merits, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint correcting the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order. Failure to do so will likely result in the dismissal of these claims with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion. (Dkt. No. 36.)

SO ORDERED.

Dated: January 16, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[18] To the extent that Plaintiff believes that his claim falls under the retaliation exception, *see Boddie*, 105 F.3d at 862 ("There must be more, such as retaliation against the prisoner for exercising a constitutional right."), the claim fails, because the Complaint does not allege that Miller filed the false misbehavior report in retaliation for Plaintiff's protected speech or conduct. *See Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (setting forth standard for First Amendment retaliation claim).

[19] Because the Court grants the Motion To Dismiss on the merits, it need not reach Defendants' argument that they are entitled to qualified immunity. (*See* Defs.' Mem. 12–14.)

22